IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARREN LEE POWELL,

        Plaintiff,

vs.                               Case No. 20-3074-SAC

JACK LAURIE, et al.,

        Defendants.

**O R D E R**

Plaintiff, _pro se_, has filed this damages action alleging claims arising from his incarceration at the Atchison County Jail. He brings this case pursuant to 42 U.S.C. § 1983 against five individuals who have responsibility for the jail, including the Sheriff of Atchison County. This case is before the court for the purposes of screening pursuant to 28 U.S.C. § 1915A.

I. Screening standards

Section 1915A requires the court to review cases filed by prisoners seeking redress from a governmental entity or employee to determine whether the complaint is frivolous, malicious or fails to state a claim upon which relief may be granted. A court liberally construes a _pro se_ complaint and applies "less stringent standards than formal pleadings drafted by lawyers." _Erickson v. Pardus_, 551 U.S. 89, 94 (2007). But, a _pro se_ litigant is not relieved from following the same rules of procedure as any other

1

litigant. See <u>Green v. Dorrell</u>, 969 F.2d 915, 917 (10th Cir. 1992).
Conclusory allegations without supporting facts "are insufficient
to state a claim upon which relief can be based." <u>Hall v. Bellmon</u>,
935 F.2d 1106, 1110 (10th Cir. 1991).  The court "will not supply
additional  factual  allegations  to  round  out  a  plaintiff's
complaint or construct a legal theory on plaintiff's behalf."
<u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

When deciding whether plaintiff's complaint "fails to state
a claim upon which relief may be granted," the court must determine
whether  the  complaint  contains  "sufficient  factual  matter,
accepted as true, to 'state a claim for relief that is plausible
on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  The court
accepts the plaintiff's well-pled factual allegations as true and
views them in the light most favorable to the plaintiff.  <u>United
States v. Smith</u>, 561 F.3d 1090, 1098 (10th Cir. 2009).  The court
may also consider the exhibits attached to the complaint.  <u>Id.</u>
The court, however, is not required to accept legal conclusions
alleged in the complaint as true. <u>Iqbal</u>, 556 U.S. at 678. "Thus,
mere 'labels and conclusions' and 'a formulaic recitation of the
elements of a cause of action' will not suffice" to state a claim.
<u>Khalik v. United Air Lines</u>, 671 F.3d 1188, 1191 (10th Cir. 2012)
(quoting <u>Twombly</u>, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).

A viable § 1983 claim must establish that each defendant caused a violation of plaintiff's constitutional rights. Walker v. Mohiuddin, 947 F.3d 1244, 1249 (10th Cir. 2020)(quoting Pahls v. Thomas, 718 F.3d 1210, 1228 (10th Cir. 2013)).

> Plaintiffs must do more than show that their rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations. They must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility…

Id. at 1249-50 (quoting Pahls); see also, Robbins v. State of Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008)("a complaint must make clear exactly who is alleged to have done what to whom").

II. Count One

In Count One of the complaint, plaintiff alleges that the Atchison County Jail is not in conformance with fire codes.

3

Specifically, he asserts that fire plans should be posted for the inmates' information.  Plaintiff claims this violates his rights under the First, Fifth, Sixth, Eighth and Fourteenth Amendments.[1] The court is not aware of how a fire code violation implicates the First, Fifth, or Sixth Amendment and plaintiff does not make allegations demonstrating a possible violation of those provisions.

The court recognizes that the Eighth Amendment protects inmates from conditions of confinement which deprive a prisoner of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The court further recognizes that if plaintiff is a pretrial detainee, then the protections of the Eighth Amendment are applied through the Fourteenth Amendment.  Ledbetter v. City of Topeka, 318 F.3d 1183, 1188 (10th Cir. 2003).  Courts have not considered compliance with fire or safety codes to be a constitutional requirement.  See Johnson v. Tex. Bd. of Crim. Justice, 281 Fed.Appx. 319, 322 (5th Cir. 2008)("the Eighth Amendment does not require that prisons meet fire and electrical codes"); French v. Owens, 777 F.2d 1250, 1257 (7th Cir. 1985)(the Eighth Amendment does not

---

[1] In most of the counts in the complaint, plaintiff alleges a violation of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.  As to each count, the court will address what appears to be the most pertinent Amendment or Amendments.

constitutionalize the Indiana Fire Code nor require compliance with numerous OSHA regulations); McMinn v. Dodson, 2012 WL 4050308 *2 (D.Colo. 9/14/2012)(noncompliance with OSHA does not state an Eighth Amendment violation); Gillespie v. Wall, 2011 WL 3319990 *4 (D.R.I. 8/1/2011)(conclusory allegations of fire code violations fail to state a claim). While the court in no way wishes to discourage compliance with fire and safety codes, plaintiff has not alleged facts plausibly describing a denial of the "minimal civilized measure of life's necessities." Therefore, the court finds that Count One fails to state a claim under § 1983.

III. Count Two

In Count Two, plaintiff alleges that his access to the courts has been denied because he has been denied "legal copies" by jail officers. "Photocopy access is not an independent constitutional right, but exists only where necessary to the prisoner's right to seek legal redress." Muhammad v. Collins, 241 Fed.Appx. 498, 499 (10th Cir. 2007). Plaintiff makes conclusory allegations but does not state facts showing that his access to the court has been unduly hampered by a denial of photocopies within two years of his filing this case.[2] Therefore, Count Two does not describe a plausible constitutional violation. See Holt v. Werholtz, 185 Fed.Appx. 737, 739-40 (10th Cir. 2006)(denial of a somewhat similar

---

[2] There is a two-year statute of limitations for § 1983 claims. Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993).

claim regarding restrictions on photocopying because of debt
prisoner owed for making legal copies).

IV. <u>Count Three</u>

In Count Three plaintiff alleges that he has been denied
access to the courts because of inadequate access to library
materials. Plaintiff is entitled to access to the courts. See
<u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977). This right, however,
does not lead to a right of access to a law library absent a
showing that the lack of such access to a library or other
resources injured plaintiff's efforts to pursue a legal claim.
<u>Lewis v. Casey</u>, 518 U.S. 343, 351 (1996); <u>Cleveland v. Harvanek</u>,
607 Fed.Appx. 770, 773 n.3 (10th Cir. 2015). Plaintiff states in
Count Three that he filed two § 1983 claims (Case No. 16-3251 and
Case No. 17-3031) which were dismissed:

> because I didn't have knowledge, experience to correctly
> file or object to motions filed against me, nor anyone
> to assist me finally out of frustration I gave up. It
> was impossible to look up fed rules or case law because
> of no law library nor would staff assist with providing
> case law or court rules.

Doc. No. 1, p. 8. Case No. 16-3251 was dismissed on September 20,
2017, more than two years before this lawsuit was filed. Case No.
17-3031 raised the same access to courts claim he raises now. The
court rejected the claim because plaintiff's allegations failed to
"'demonstrate the alleged shortcomings of the legal assistance
provided by the jail hindered his efforts to pursue a legal

6

claim.'" Doc. No. 17, p. 2 (quoting <u>Lewis</u>, 518 U.S. at 351).  This
problem remains.  Plaintiff alleges that he was frustrated and
gave up.  He does not allege facts plausibly showing that he would
have prevailed upon a legal claim if not for inadequate legal
resources.

V. <u>Count Four</u>

Here, plaintiff claims "hazardous conditions" in the form of
rust, black mold, inadequate cleaning supplies, and a damaged
staircase which offers access to materials which could be used as
a weapon or to make holes in cell walls.  Plaintiff also complains
that "the pods" are not properly disinfected and that cell door
locks can be "easily popped."

Plaintiff's general allegations do not plausibly describe
conditions of confinement which deprive a prisoner of "the minimal
civilized measure of life's necessities," such as food, clothing,
shelter, sanitation, medical care, or personal safety.  There is
no indication of harm from these conditions, other than damage to
the cell walls and fear caused to some inmates.  The court finds
that plaintiff has failed to state a claim for relief in Count
Four.

VI. <u>Count Five</u>

In Count Five plaintiff alleges that Atchison County Jail
inmates are not tested for tuberculosis.  Plaintiff does not allege
that he has contracted tuberculosis because of defendants' failure

to test or that he has suffered any other injury. Because plaintiff has not alleged an actual injury, he has not stated a claim for compensatory damages relief. See White v. Holmes, 21 F.3d 277, 281 (8th Cir. 1994)(some actual injury is required to state an Eighth Amendment violation); Burnett v. Bishop, 2017 WL 430517 *9 (D.Md. 1/31/2017)(failure to conduct annual tuberculin tests does not state a claim absent injury); Matthews v. White, 2013 WL 1890737 *5 (S.D.Ala. 4/9/2013)(Eighth Amendment claim dismissed in part because plaintiff did not develop an active case of TB); see also Carter v. Strain, 2009 WL 3231826 *4 (E.D.La. 10/1/2009)(routine testing of incoming inmates for infectious diseases is not constitutionally required); High v. Doria, 1997 WL 733925 *2 (N.D.Ill. 11/14/1997)(same).

## VII. Count Six

Count Six alleges that that the jail bills inmates for various kinds of medical services without allowing an inmate an opportunity to contest the charges. Plaintiff does not describe specifically how he has been injured because of this practice. He does not allege a physical injury or some other type of harm.

Courts have upheld the practice of charging inmates for medical services against Eighth Amendment and due process challenges. Harper v. Tritt, 726 Fed.Appx. 101, (3rd Cir. 2018)("nothing unconstitutional about a prison program that requires an inmate to pay for a small portion of his medical care

so long as the provision of needed medical care is not conditioned on an inmate's ability . . . to pay"); Tijerina v. Patterson, 507 Fed.Appx. 807, 810 (10th Cir. 2013) ("Although a state must provide inmates with basic medical care, ... we are not aware of any authority suggesting such care must be provided free of charge with respect to prisoners who have the ability to pay."); Cannon v. Mason, 340 Fed.Appx. 495, 499 (10th Cir. 2009)("The fact the prison's policy requires inmates with adequate resources to pay a small cost for their health care is not unconstitutional."); Bailey v. Carter, 2001 WL 845446 *2 (6th Cir. 2001)(requiring an inmate to make a three dollar co-pay for medical treatment does not violate the Eighth or Fourteenth amendments); Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999) (policy requiring inmates to pay for their medications if they can afford to do so did not violate constitution); Reynolds v. Wagner, 128 F.3d 166, 173-174 (3rd Cir. 1997)(deliberate indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society); Andy Li v. Contra Costa Cty., 2017 WL 4861487 *14 (N.D. Cal. 10/24/17)("It does not offend the Constitution for prison and jail officials to require inmates to pay for some of the costs of their medical care, so long as indigent inmates are not denied medical care due to their indigence."); Holmes v. Howard, 2007 WL 505360 *6 (W.D.Ark. Feb.14, 2007)

("Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so.").

On the basis of this authority, the court finds that plaintiff has failed to state a claim for relief in Count Six.

VIII. Count Seven

In Count Seven plaintiff generally claims that incoming and outgoing mail "is subject" to being censored and seized without any notice and right to contest the seizure.  Plaintiff does not specify how, when or how much of his mail has been seized or censored, or who acted to seize or censor his mail.  His conclusory allegations do not describe a specific injury or give fair notice to defendants of his claim.

IX. Count Eight

In Count Eight plaintiff alleges that he entered the jail on June 5, 2019 and that prior to that date he was in ICU because of diabetes complications.  His A1C number was very high when he entered the jail.  According to plaintiff, certain tests should have been conducted were not done.  These tests include:  an eye examination; a cardiac exam; a peripheral pulse exam; a lipid profile; a microalbumin screen; a urine ketones exam; and a creatine test.  Plaintiff states that a foot and neurologic exam was done and a A1C test and glucose test were done.  Other allegations in the complaint indicate that plaintiff's blood sugar

levels have been regularly tested.  Plaintiff states that the damage to his body is unknown and cannot be treated.

Plaintiff has not alleged damage from defendants' actions nor does plaintiff allege which individual defendants are responsible for the failure to perform the tests.  For these reasons he has not stated a claim for relief in Count Eight or given fair notice to defendants of his claim.

X. Count Nine

Plaintiff alleges that his constitutional rights have been violated because he has been limited to eating a "diabetic diet," which offers fruit instead of the regular dessert.  Plaintiff claims that the diabetic tray has caused his blood sugar levels to be worse than the regular vegetarian diet, which is what he would prefer.  Plaintiff does not allege that the diabetic diet is substantially unhealthy or unsafe or that he has suffered a significant injury because of that diet.  Therefore, he has failed to state a claim for a violation of the Eighth and Fourteenth Amendments.  Plaintiff also suggests that the diabetic diet is being forced on him as an act of retaliation for previous lawsuits. This alleged retaliatory conduct, however, is not sufficiently stringent to constitute an actionable retaliatory event.  See Gray v. Geo Group, Inc., 727 Fed.Appx. 940, (10th Cir. 2018)(first amendment retaliation claim requires proof of an injury that would

chill a person of ordinary firmness from continuing to engage in that activity).

XI. <u>Count Ten</u>

Plaintiff's Count Ten is labelled "Excessive Force." This count appears to be focused against defendant Will Ebhart, a jail officer. Plaintiff alleges that he was upset because of difficulties he had receiving a fax sent to him at the jail from a hospital. Defendant Ebhart put his hands on plaintiff and plaintiff "naturally drew my fist back, became angry and said don't f---ing touch me." Doc. No. 1, p. 17. Ebhart then pulled a taser "pushing me to my cell. Naturally I'm mad and cussing at him." <u>Id.</u> Plaintiff alleges that other inmates were upset with how the situation was being handled. At least one inmate flooded his cell. Defendant Ebhart, who had left the area, returned to plaintiff's cell ten minutes later because inmates were being rowdy. He cuffed plaintiff and escorted plaintiff from his cell. Ebhart held a taser against plaintiff but did not activate the taser. Plaintiff alleges that Ebhart roughly walked plaintiff and pushed him as they approached a puddle of water on the floor causing plaintiff to slip and fall down a few stairs. Plaintiff further alleges that he had a seizure and lost consciousness. He states that when he awakened afterwards his arm was really sore and red with

12

abrasions.[3]  Plaintiff states that Ebhart should not have escorted plaintiff through water from a flooded cell when he could have taken plaintiff over a shorter and drier route.

Although it is not clear from his complaint, the court shall assume that plaintiff is a pretrial detainee and only consider whether he has stated a plausible claim of excessive force as determined by an objective standard.  See Kingsley v. Hendrickson, 576 U.S. 389, 135 S.Ct. 2466 (2015).  The standard's application was discussed by the Court as follows:

> A court (judge or jury) cannot apply this standard mechanically. See [County of Sacramento v. Lewis, 523 U.S. 833, 850, 118 S.Ct. 1708 (1998)]. Rather, objective reasonableness turns on the "facts and circumstances of each particular case." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. See ibid. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. See, e.g., Graham, supra, at 396,

---

[3] Plaintiff has submitted a somewhat fuzzy photograph showing an abrasion on his arm.  Doc. No. 1-1, p. 19.

109 S.Ct. 1865. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

135 S.Ct. at 2473.

Here, the decision to walk through some water on the floor does not involve excessive force and is a matter of negligence, not a matter of constitutional dimension. Id. at 2472. Plaintiff describes a somewhat tense jail situation in which a push from a jail officer escorting a handcuffed inmate caused the inmate to slip on a watery surface and fall down a few steps causing an abrasion and soreness to the inmate's arm. Applying an objective standard to plaintiff's allegations, the court does not believe this plausibly describes the use of excessive force. See Routt v. Howard, 764 Fed.Appx. 762, 766-67 (10th Cir.) cert. denied, 140 S.Ct. 191 (2019)(finding no excessive force in twisting arm behind inmate's back and pushing awkwardly down hallway and finding qualified immunity against claim of excessive force when inmate was slung into a cell, injuring him); Hanson v. Madison County Detention Center, 736 Fed.Appx. 521, 531-32 (6th Cir. 2018)(split second shove of arrestee against a wall was not excessive); Silverman v. Lane, 2019 WL 4040111 *3-4 (N.D.Cal. 8/27/2019)(forearm/hand grabbed with force and pushed and tugged by surprise through tray slot causing numbness in two fingers and internal tightness – not excessive); see also, Marshall v. Milyard,

415 Fed.Appx. 850, 853 (10th Cir. 2011)(digging fingernails into wrist of inmate is not excessive, citing cases from four circuits and the District of Kansas); DeWalt v. Carter, 224 F.3d 607, 619-20 (7th Cir. 2000)(shove into door frame causing bruised back is not excessive).

XII. Lockdown - equal protection

Plaintiff alleges that he was placed on lockdown for ten days after the incident involving defendant Ebhart although five other named inmates were not punished as severely or at all when they were involved in similar alleged misconduct. Plaintiff claims this violates his rights under the Equal Protection Clause. Plaintiff does not allege class-based discrimination. So, this appears to be a "class-of-one" equal protection claim.

The Supreme Court has acknowledged that "[r]unning a prison is an inordinately difficult undertaking" which "requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." Kingsley, 576 U.S. 389, 135 S.Ct. 2466, 2474 (2015)(quoting Turner v. Safley, 482 U.S. 78, 84-85 (1987) and Florence v. Board of Chosen Freeholders of County of Burlington, 566 U.S. 318, 326 (2012)). "Officers facing disturbances 'are often forced to make split-second judgments - - in circumstances that are tense, uncertain, and rapidly evolving.'" Id., quoting Graham v. Connor, 490 U.S. 386, 397 (1989)); see also, Overton v. Bazzetta, 539 U.S.

15

126, 132 (2003)( "We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

The court is also mindful of the dangers of taking a broad approach to "class-of-one" equal protection claims.  As the Tenth Circuit has stated:

> [T]he concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors.  It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others . . . It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review.  This would constitute the federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking:  a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.
>
> To make matters worse, a certain degree of randomness and irrationality necessarily "abounds at the bottom rung of law enforcement," Bell v. Duperrault, 367 F.3d 703, 712 (7th Cir. 2004)(Posner, J., concurring), and in other areas of state and local decisionmaking, as well.

Jennings v. City of Stillwater, 383 F.3d 1199, 1210-11 (10th Cir. 2004).  These "concerns are magnified," according to the Tenth Circuit, because

> [t]he latitude afforded police officers, IRS agents, university administrators, zoning officials, and other

16

similar government actors necessarily results in a
sizeable amount of random variation in outcome. If even
innocuous inconsistencies gave rise to equal protection
litigation, government action would be paralyzed.

Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216-17 (10th
Cir. 2011). This is a factor the court may consider in deciding
whether plaintiff has met his pleading burden in this case. Id.
at 1218-19.

The Tenth Circuit has held that a plaintiff in a "class-of-
one" claim must establish: 1) that he was treated differently
than others who were similarly situated in every material respect;
and 2) that the difference in treatment was without rational basis
and wholly unrelated to any legitimate state activity. Id. at
1216. "The allegations necessary to establish this level of
similarity will vary depending on the nature of the case, and
'[t]he more variables involved in the government action at issue,
the more specifics the plaintiff will need to allege to allow for
meaningful comparison between the plaintiff's (negative)
experience and the (positive) experiences of others.'" Rucker v.
Gilmore, 2015 WL 506210 *9 (D.Kan. 2/6/2015)(quoting Haik v. Salt
Lake City Corp., 567 Fed.Appx. 621, 632 (10th Cir. 2014)). "Because
'it is exceedingly difficult to demonstrate that any difference in
treatment is not attributable to a quirk of the plaintiff or even
to the fallibility of administrators whose inconsistency is as
random as it is inevitable . . . courts have imposed exacting

17

burdens on plaintiffs to demonstrate similarity in class-of-one cases.'" Shifrin v. Toll, 483 Fed.Appx. 446, 449 (10th Cir. 2012)(quoting Jicarilla Apache Nation v. Rio Arriba Cnty., 440 F.3d 1202, 1213 (10th Cir. 2006)).

The court concludes that plaintiff has not alleged sufficient specific facts to describe more than a possible claim that plaintiff was intentionally treated differently from others similarly situated and without a rational basis for the difference in treatment. Even differences in the timing of disciplinary infractions could rationally influence a difference in charges, as well as different viewpoints of jail officers and different inmate histories of good and bad conduct. See Blair v. Raemisch, 804 Fed.Appx. 909, 920 (10th Cir. 2020)(affirming dismissal of claim alleging differences in diet between allegedly similarly situated inmates); Heard v. Chavez, 699 Fed.Appx. 788, 792 (10th Cir. 2017)(same result as to allegation of difference in access to a book).

XIII. Criminal charges

Finally, plaintiff asks that criminal charges be pressed against defendant Ebhart for battery and that criminal charges be issued for a violation of the HIPAA Act. At least outside the realm of a criminal contempt proceeding, the court is not empowered to institute a criminal prosecution. See Maine v. Taylor, 477 U.S. 131, 136 (1986)("the United States and its attorneys have the

18

sole power to prosecute criminal cases in federal courts"); U.S. v. Davis, 285 F.3d 378, 383 (5th Cir. 2002)(court lacks power to require United States Attorney to sign indictments).  That is the job of the executive branch.  Therefore, plaintiff's request for criminal charges fails to state a claim.[4]

XIV. Motion to reconsider class certification and motion to appoint counsel

Plaintiff has filed a motion to reconsider certification of this case as a class action and to appoint counsel.  Doc. No. 9.

Regarding appointment of counsel the court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1115 (10th Cir. 2004).  "It is not enough 'that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case.'" Steffey v. Orman, 461 F.3d 1218, 1223 (10th Cir. 2006)(quoting Rucks v. Boergermann, 57 F.3d 978,

---

[4] Orders from the Tenth Circuit and this court have observed that there is a consensus opinion that HIPAA does not create a private right of action. E.g., Wilkerson v. Shinseki, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010); Wilson v. Saint Francis Community Services, 2018 WL 4409440 *2 (D. Kan. 9/17/2018); Leiser v. Moore, 2017 WL 4099469 *6 (D. Kan. 9/15/2017); Keltner v. Bartz, 2013 WL 761157 *4 (D. Kan. 2/27/2013); Howard v. Douglas County Jail, 2009 WL 1504733 *4 (D. Kan. 5/28/2009). The Tenth Circuit has also noted that two circuit courts have held that § 1983 may not be used to remedy a HIPAA violation. Thompson v. Larned State Hospital, 597 Fed.Appx. 548, 550 (10th Cir. 2015)(citing Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010) and Seaton v. Mayberg, 610 F.3d 530, 533 (9th Cir. 2010)). In other words, a governmental agency must enforce penalties for HIPAA violations. Adams v. CCA, 2011 WL 2909877 *5 (D. Idaho 7/18/2011); Agee v. U.S., 72 Fed.Cl. 284, 289-90 (Fed. Ct. Cl. 2006).

979 (10th Cir. 1995)).  Here, the court understands that plaintiff may face some obstacles in presenting the facts and law concerning his case.  But, at this point in time, the court is not convinced that appointment of counsel is warranted.  Considering all of the circumstances, including the quality of plaintiff's pleadings, the nature and complexity of plaintiff's claims, and that the merits of the case are unclear at best, the court shall deny plaintiff's motion for appointment of counsel without prejudice to plaintiff renewing his request at a later point in this litigation.

The court shall deny plaintiff's request for reconsideration of class certification in light of the findings in this screening order which indicate that the original complaint fails to state a claim.

XV. <u>Conclusion</u>

For the above-stated reasons, the court believes that the complaint fails to state a claim.  The court shall direct that plaintiff by July 17, 2020 show cause why plaintiff's claims should not be dismissed as explained in this order.  In the alternative, plaintiff may file an amended complaint by July 17, 2020 which corrects the deficiencies discussed herein.  An amended complaint supersedes the original complaint and must contain all of the claims upon which plaintiff wishes to proceed.  An amended complaint should not refer back to the original complaint.

The court also denies without prejudice plaintiff's motion for reconsideration of class certification and for appointment of counsel.  Doc. No. 9.

**IT IS SO ORDERED.**

Dated this 17th day of June, 2020, at Topeka, Kansas.


s/Sam A. Crow _____
Sam A. Crow, U.S. District Senior Judge